**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number 21-CR-332-PLF** |
| **STEPHEN CHASE RANDOLPH,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's motion to revoke detention order dated May 21, 2021 (DE 24).

On January 6, 2021, unlike many who attended the political rally, defendant chose to leave the rally early and march on the U.S. Capitol. Unlike many of those who marched on the Capitol, defendant chose to engage in violence against law enforcement. Unlike many of those who engaged in violence, such as co-defendant Johnson, defendant did not stop at one act, but followed up his first assault with a second assault on law enforcement. And three months later, instead of expressing regret or remorse about his conduct, defendant bragged about it. The magistrate judge in defendant's home state of Kentucky was correct in finding that defendant is a danger to the community and should be detained.

**Procedural History**

On April 16, 2021, the District Court for the District of Columbia issued an arrest warrant charging defendant Stephen Chase Randolph with one felony count of Assaulting, Resisting, or Impeding Certain Officers and Inflicting Bodily Injury in violation of 18 U.S.C. § 111(a)(1) and

1

(b), one count of Obstructing Law Enforcement during Civil Disorder in violation of 18 U.S.C. § 231, and one count of Obstruction of Official Proceeding in violation of 18 U.S.C. § 1512(c)(2) (DE 6).  These charges stemmed from his actions on January 6, 2021, during the timeframe a joint session of the United States Congress had convened to certify the vote count of the Electoral College of the 2020 Presidential Election.

On April 20, 2021, defendant was arrested in the Eastern District of Kentucky (DE 11). On April 30, 2021, after a detention hearing, U.S. Magistrate Matthew Stinnett ordered the defendant detained, finding by clear and convincing evidence that no combination of release conditions would reasonably assure the safety of the community "where the defendant openly, brazenly, and ruthlessly assaults law enforcement in front of numerous video cameras on the steps of democracy and gloats about it later." (Exhibit 2, Detention Order, at 17).

On April 30, 2021, a federal grand jury in the District of Columbia returned a nine-count indictment charging the defendant and co-defendant Paul Russel Johnson with felony obstruction of law enforcement during a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 1); Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c) (Count 2), one count of Assaulting Certain Officers and Inflicting Bodily Injury, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count Three), three felony counts relating to disorderly conduct and violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752 (Counts 5-7), and two misdemeanor counts relating to disorderly conduct and violence in a Capitol Building or Grounds in violation of 40 U.S.C. § 5104(e)(2) (Counts 8-9) (DE 15).  In addition, defendant was charged alone in a separate count of assault against officer D.C. in violation of 18 U.S.C. § 111(a)(1) (Count 4) (*Id.*).

On May 21, 2021, the defendant filed the instant motion (DE 24) to revoke the magistrate

judge's order of detention.

## Applicable Authority

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b).  The court's review of the magistrate judge's order of release is *de novo*.  *United States v. Little*, 235 F. Supp. 3d 272, 277 (D.D.C. 2017).  The reviewing court has discretion to call witnesses, review transcripts, or proceed by proffer. *Id.*

If a defendant is eligible for a detention hearing, the Bail Reform Act provides that the court "shall" order pretrial detention if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  § 3142(e).

To determine whether conditions exist that will reasonably assure the appearance of the defendant as required and the safety of any person in the community, the court must consider four statutory factors: (1) "the nature and circumstances of the offense  charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4).   A finding that a defendant poses a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(e).

## Factual Background

The Government incorporates by reference the statement of facts supporting the complaint in this matter (DE 6).  In pertinent part, a publicly available video (Exhibit 1)[1] shows that at

---

[1] For ease of viewing, the Government is also submitting Exhibit 1A, which is a copy of Exhibit 1 slowed to three-quarter speed.

approximately 1 p.m. on January 6, defendant was among a crowd of people who were approaching the Capitol. When the group arrived at the Peace Circle, they stopped at a barricade formed by metal bike racks and fencing, and manned by U.S. Capitol Police ("USCP") officers. The barricade was clearly marked with "AREA CLOSED" signs. At that time, defendant (red circle) grabbed hold of the metal barrier directly opposite officer C.E.



Along with other rioters, defendant alternatively pulled and shoved the barrier, while officers, including officers C.E. and D.C., attempted to keep the barrier in place. Defendant forced the barrier backwards, in turn forcing the defending officers backwards. As the barrier moved back, it forced officer C.E. to fall towards the stairs (green circle). Officer C.E. hit her head on a handrail and collapsed on the ground with what was later discovered to be a concussion.



Defendant ignored the fallen officer.  Instead, as soon as officer C.E. had been knocked down, the defendant began to climb over the metal barrier.  The video shows that at the time defendant chose to climb over the barrier, it was still mostly upright, and thus, defendant had to exercise considerable effort to get himself over the barrier.



Defendant's reason for climbing the barrier soon became clear.  As soon as defendant made it over, defendant turned to his left and attacked officer D.C., grabbing for officer D.C.'s neck.



Another officer came to officer D.C.'s aid and together, the two officers struggled to dislodge defendant from officer D.C.



After considerable effort, the officers were able to dislodge defendant, who continued to engage with the officers.



Eventually, the officers were able to get defendant back behind the now-fallen barrier.



Several months later, undercover law enforcement officers visited defendant at his workplace and engaged him in conversation regarding the events of January 6. In this conversation, unaware his statements were being recorded, defendant said he attended the former President's speech but left early after hearing people would be going to the U.S. Capitol. Defendant said that upon arriving at the area of the U.S. Capitol, there were steel barriers set up in front of a grassy area in front of the U.S. Capitol building and there were approximately 15 police officers spread out in this particular area. Defendant said he was in this area for approximately five minutes before "shit went crazy" and that he was standing close to people who were throwing items at the police. Defendant further stated "I was in it," and "It was fucking fun," referring to

being in the crowd at the U.S. Capitol.  Defendant said he witnesses a female police officer get pushed over by barricades and that her head had bounced off the handrails by the stairs.  Defendant opined that the female police officer likely had a concussion because she was curled up in the fetal position after being pushed to the ground (DE 1).

Defendant was arrested on April 20, 2021.  At the time of his arrest, his residence was searched pursuant to a search warrant, and the FBI located the same black jacket and grey hat was wearing on January 6 (Exhibit 2, at 3).  In a post-*Miranda* interview, defendant admitted that he was the individual seen on video engaging with the officers at the Peace Circle (*Id.*).

## Argument

The government respectfully submits that there are no conditions or combinations of conditions that can effectively ensure the safety of any other person.

## Nature and Circumstances of the Offenses

The first factor the Court must consider is the nature and circumstances of the offenses charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). The Courts that have addressed the detention or release of the Capitol Riots defendants who engaged in violence have uniformly found that the nature and circumstances of the charged offense weighs in favor of detention.

Defendant relies heavily on the fact that co-defendant Johnson has been released.[2]  But Johnson's status is not relevant to this court's determination of the nature and circumstances of

---

[2] The Government sought Johnson's detention when he was arrested but the local magistrate in his arresting jurisdiction declined to order detention.  The Government did not appeal that ruling to this Court.

defendant's offenses.  The status of a co-defendant is not one of the Section 3142(g) factors which are to be considered when making an individualized bail determination.

More importantly, Johnson's status is not relevant because defendant engaged in additional violence.  After the first assault, defendant climbed over the barrier and, by himself, assaulted officer D.C.  As the magistrate judge found, defendant engaged in this second assault "despite knowing he had just injured the Victim Officer, and with what appears to be no regard for the risk that he could injure someone else if he continued his violence or for the risk that his actions could inspire others to mimic his unconscionable acts." (Exhibit 2, at 15-16).   This second assault shows a higher level of aggression and intentionality on the part of the defendant, and weighs more heavily in favor of detention than the evidence against co-defendant Johnson.

And, unlike Johnson, more than three months after the riot, after the arrest of several hundred rioters, Randolph was bragging about his time at the Capitol.  Though he clearly recalled Officer C.E. having been injured, and knew she "probably had a concussion," defendant nevertheless described his presence that day as "fucking fun," evincing a "profound disregard for the rule of law and the safety of his fellow person." (*Id*. at 17).

Defendant agrees that Chief Judge Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants connected to the events of January 6.  *See United States v. Chrestman*, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021).  These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot"; or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; and (6) the nature of "the defendant's words and

movements during the riot," including whether he "damaged or attempted to damage federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot." Id. at *7–8.

The *Chrestman* factors put defendant in the most serious category of offenders. Defendant has been charged with multiple serious felonies, including crimes of violence and causing serious physical injury to a law enforcement officer. Though defendant does not appear to have engaged in prior planning, he transformed a police barricade into a dangerous weapon. Defendant's first attack on law enforcement was coordinated with other rioters – the videos show him pushing and pulling the barricades along with other rioters in a joint effort to break past the police line.

And though defendant's second assault on law enforcement was done alone, that does not stop him from having played a leadership role. Defendant's assaults occurred early in the day on January 6 – defendant was one of the first to engage in violence that day. And defendant's violence was not random – it was directed specifically at a police barrier that was clearly intended to keep people from getting to the Capitol. Defendant's role in destroying that barrier and turning the protest into a riot was a key part of the larger effort of the rioters to gain access to the Capitol and stop the certification of the election. As the magistrate judge found, Defendant played a "de facto leadership role" relative to other rioters at the Peace Circle when he physically removed the metal barrier, allowing hundreds of other rioters to advance to the Capitol through that location. (Exhibit 2, at 9). In other words, by his conduct, defendant paved the way for other rioters both to engage in violence and to break through police barricades. *See Chrestman*, at *15 ("He not only violated the law himself, but encouraged others to engage in unlawful conduct and made it easier for them to do so by obstructing police barriers[.]").

The final *Chrestman* factor – the nature of defendant's words and movements during the riot – also puts defendant among the most serious offenders because his repeated assaults distinguish him from those who refrained from violence.  In *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021), the D.C. Circuit made clear that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id*. at 1284.  "In so holding, *Munchel* drew categorical distinctions between the violent and non-violent January 6 participants explaining that the former are categorically more dangerous." *United States v. Fairlamb*, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021).

And unlike co-defendant Johnson, defendant's "movements during the riot" include a second assault, committed after he had already seriously injured one officer.  Defendant's violent conduct on January 6 thus puts him in the most dangerous category of offenders carved out by *Munchel* and *Chrestman*.[3]  The intent and result of defendant's conduct was to disrupt the peaceful and orderly transition of presidential power using violence. The nature and circumstances of defendant's offenses show a clear disregard for the law, an aversion to the fundamental tenets of democracy, and a willingness to act violently, all of which indicate that he poses a danger to the community.

---

[3] With respect to co-defendant Johnson, the local magistrate judge rendered an oral ruling from the bench granting bond (DE 22, at 21).  For this reason, there is nothing in the record to indicate whether or how that court analyzed *Munchel, Chrestman* or any other recent detention ruling by D.C. District Courts.  By contrast, Magistrate Judge Stinnett provided a careful and detailed analysis of D.C. law in rendering his order to detain defendant (*see* Exhibit 2).

## Weight of the Evidence

The second factor also clearly weighs in favor of detention.  The evidence against the defendant is overwhelming.  As discussed above, defendant's actions were captured clearly on video.  There is also overwhelming evidence that defendant is the individual seen in these videos, as he was wearing distinctive clothing which was found at his residence at the time of his arrest, and he admitted to undercover law enforcement officers that he is the individual seen in the video.

## Defendant's History and Characteristics

Under the third factor, the Court must consider defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," 18 U.S.C. § 3142(g)(3)(A); and "whether, at the time of the current offense or arrest, [defendant] was on probation, on parole, or on other release, *Id.* § 3142(g)(3)(B).

Defendant does not have a serious criminal history, though it does include a misdemeanor conviction for resisting arrest (See Exhibit 3, at 4),[4] which as the magistrate judge noted, raises some concern about his disregard for law enforcement.

Much more concerning is that defendant's actions on January 6 show that he is willing to allow his own personal beliefs to override the rule of law, and that after January 6, he showed absolutely no remorse for his conduct.  As the magistrate judge found, over three months after the Capitol Riots, when defendant was no longer "swept up" in the events of January 6, but with the

---

[4] The D.C. Pretrial Services report lists the charge as public intoxication (DE 21 at 3).  But Exhibit 3, the pretrial services report from the Eastern District of Kentucky notes that defendant was convicted of both public intoxication and resisting arrest and was given a sentence of 30 days in jail (suspended) on the resisting arrest conviction.

clarity of hindsight, defendant expressed no regret for his behavior and described the events of that day as "fucking fun." (Detention Order, at 16).  Defendant's conduct both on January 6 and afterwards thus reflects poorly on his character.

While defendant suggests that he was merely "caught up in the frenzy" of January 6 (DE 24 at 15), the evidence shows otherwise.  Whatever "frenzy" existed during the first assault, Defendant acted completely on his own when he thereafter chose to climb the barricade and attack officer D.C.  And the fact that even after three months, defendant could refer to January 6 as "fucking fun" is more than "regrettable."  It demonstrates that long after any "frenzy" had calmed down, defendant did not believe he or the other rioters had done anything wrong on January 6.

It is also disingenuous for defendant to claim that the only danger he poses is that he might try to "stop an act of Congress in the future" (DE 24, at 15).   As the magistrate judge noted, the Bail Reform Act does not limit a court to assessing whether defendant will repeat identical behavior (Exhibit 2, at 15) and defendant concedes that the standard is whether a defendant would engage in the "same types" of dangerous conduct.  *United States v. Lee*, 451 F. Supp. 3d 1, 7-8 (D.D.C. 2020).  Here, the "type" of dangerous conduct defendant engaged in was attacking police officers who were in the way of where defendant wanted to be.  Neither the presence of video cameras nor the presence of other law enforcement officers was sufficient to stop him.  In light of defendant's brazen actions, and his belief that he did nothing wrong on January 6, this Court can have no confidence that he will conform his conduct to the law if released.

That the reason defendant wanted to get past a law enforcement barrier on January 6 was because he believed lies about the 2020 election makes him more, not less, dangerous. *See United States v. Sabol,* 2021 WL 1405945, at *15 (D.D.C. Apr. 14, 2021) ("That [the defendant] acted violently against law enforcement protecting the peaceful transition of power based on a belief that

the 2020 Presidential Election was stolen is also very alarming [and] indeed raises concerns about [his] character and the danger [he] may present to the community if he were released."). Such a motivation shows defendant's "inability (or refusal) to exercise his independent judgment and conform his behavior to the law" *United States v. Chansley*, 2021 WL 861079 (D.D.C. March 8, 2021) at *10. Because the same lies continue to be touted by the same people who defendant believed prior to January 6, and because there is no evidence defendant has renounced the beliefs that he thinks justified his violence, *see, e.g., Chrestman*, at *14 (analyzing such considerations), the threat of further violence is "present, concrete, and continuing." *Sabol*, at *18.

### Nature and Seriousness of the Danger

The final factor is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Defendant's conduct in this case—assaulting police officers in an effort to undermine a presidential election—shows a disregard for the safety of others, the rule of law, and the democratic process. Indeed, "if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *United States v. Fairlamb*, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021).

"It cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community." *Munchel*, 991 F.3d at 1284–85. In *Munchel*, the D.C. Circuit remarked that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id.* at 1284. Defendant's actions on January 6 place in him

14

unambiguously into *Munchel*'s more dangerous category and provide clear and convincing evidence that he "poses a concrete, prospective threat to public safety." *Id*. at 1280.  *See also* Judgment, *United States v. Worrell*, 21-3020 (D.C. Cir. May 5, 2021) [Doc. No. 1897399] (affirming district court denial of reconsideration of detention, in part because the district court found that the defendant "actually assaulted police officers," citing *Munchel*)

## <u>Conclusion</u>

For the above reasons, the Government submits that there is clear and convincing evidence that the defendant is a danger to the community, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community if he were to be released.  The Court should therefore deny his motion.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:     /s/ *Robert Juman*
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov

Date:  May 27, 2021

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading was served on all counsel of record via the Court's electronic filing service.


_/s/    Robert Juman_
Robert Juman
Assistant United States Attorney

Date: May 27, 2021